KRIER PRESERVING COMPANY, Respondent, vs. WEST BEND HEATING & LIGHTING COMPANY, Appellant.

*April 2—April 30, 1929.*

For the appellant there was a brief by *Frank W. Bucklin* of West Bend and *Cutting, Moore & Sidley* of Chicago, and oral argument by *Mr. Bucklin.*

For the respondent there was a brief by *Schanen & Huiras* of Port Washington, and oral argument by *Peter M. Huiras.*

STEVENS, J.   1. The appellant is in error in its contention· that the action should be dismissed because the complaint alleges gross negligence, while the judgment is based on a finding of ordinary negligence.   The complaint alleged

that the plaintiff's damages were caused "by reason of said defendant's gross negligence in failing to restore its power" and "by reason of the defendant corporation's gross carelessness, gross negligence, and gross lack of diligence in restoring said service." The complaint also alleged in a single cause of action that the interruption "was such that by the exercise of reasonable care and diligence on the part of the said defendant corporation, the service . . . could have been restored within a few hours," and "that said interruption in service was caused by the defendant corporation's failure to exercise reasonable and practical care, foresight, and diligence in constructing, maintaining, and operating its service lines." It will be noted that "there is no language charging that the acts complained of were wilful or wanton or intentional. It cannot be said that there are any averments in the pleadings showing such wilful or intentional disregard of the rights . . . of others as are necessary to constitute gross negligence." *Bentson v. Brown,* 186 Wis. 629, 632–3, 203 N. W. 380. The mere use of "gross" in connection with the word "negligence" is not sufficient to charge this degree of negligence, unless the pleading alleges "either a wilful intent to injure, or that reckless and wanton disregard of the rights . . . of another or of his property, and that willingness to inflict injury, which the law deems equivalent to an intent to injure." *Willard v. C. & N. W. R. Co.* 150 Wis. 234, 239, 136 N. W. 646. This complaint contains no such allegation.

The case was tried and submitted to the jury on the theory that ordinary negligence alone was involved. The defendant requested the submission of no question on gross negligence.

2. It was the duty of the defendant to supply reasonable and adequate electric service. This duty did not make it "an insurer of continuous service, if conditions over which it had no control caused interruptions in service, provided

that . . . (it) at all times exercised reasonable and practicable care, foresight, and diligence in so constructing, maintaining, and operating its plant as to prevent such interruptions so far as practicable." *Waukesha Gas & E. Co. v. Waukesha Motor Co.* 190 Wis. 462, 463–4, 209 N. W. 590.

The jury found that the interruptions in service began at ten o'clock in the morning. The proof shows that the service was not restored until about ten o'clock in the evening of the same day. The plaintiff telephoned the defendant frequently during the day asking that service be restored. The only effort made to restore service was to send approximately one half of the available men out to patrol about forty miles of line and to trim trees along this line. The men did not patrol the entire line before they quit for the day. The trouble was located near the plant of the plaintiff company by others than the trouble men of the defendant company. There was a switch on the line located about six miles from the plant of the plaintiff, by the use of which the defendant could have determined that the trouble was located on that six miles of line. This switch was not used for this purpose, and the men made no examination of this six miles of line.

Had the trouble men started their inspection at the plant of the plaintiff where the trouble was reported, they could have found the branch of the tree that had fallen upon the electric wires and caused the trouble to be removed and the service restored in time to have obviated all loss sustained by the plaintiff. Under this state of facts the case presented an issue of fact for the jury as to the negligence of the defendant company.

3. The evidence abundantly sustains the finding of the jury as to the loss caused from the spoiling of peas and the expense necessarily incident to the handling of these spoiled peas. The plaintiff's right to recover these damages is not

affected by the fact that it continued its harvesting operations and the operation of its viners after the power was off, because it did so in reliance upon assurances given it by defendant's employees that the power would be restored in a short time.

4. The jury found that the plaintiff sustained $450 "factory loss" through this interruption of service. The evidence does not disclose any satisfactory basis for the assessment of these damages. The finding seems to be based principally upon the assertion that the failure to operate the viners and to continue harvesting during the entire day here in question permitted peas in the field to advance toward ripening to such a stage that they could not be used for canning. This constitutes a questionable foundation for the finding of the jury in view of the fact that the plaintiff did not stop the harvesting or shelling of peas until late in the afternoon of that day, so that very little time was lost in the work of harvesting the crop. The officers of the plaintiff frankly admitted that this claim is based purely on a mere estimate and that they had made no attempt to accurately determine the amount of such "factory loss." Verdicts which assess damages that are the basis of judgments cannot be founded upon such insecure and purely speculative proof as that offered to sustain this claim for "factory loss."

The judgment appealed from is modified by striking therefrom the sum of $450 assessed for "factory loss," and, as so modified, is affirmed. appellant to recover costs in this court.

*By the Court.*—So ordered.