Larry LOGAN and Darlene Logan,
Plaintiffs/Appellants,

v.

Bart PHILLIPS and The City
of Arnold, Defendants,

and

Union Electric Company,
Defendant/Respondent.

Larry LOGAN, Plaintiff/Appellant,

v.

Bart PHILLIPS and The City
of Arnold, Defendants,

and

Union Electric Company,
Defendant/Respondent.

Nos. 65071, 65225.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 1, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 8, 1994.

Case Transferred to Supreme Court
Jan. 24, 1995.

Case Retransferred to Court of Appeals
April 25, 1995.

Original Opinion Reinstated
May 4, 1995.

Dennis H. Tesreau, Hillsboro, for appellants Larry Logan and Darlene Logan.

John Doyen, Clayton, for defendant Darlene Logan.

Gerard T. Noce, St. Louis, for defendant City of Arnold.

Louis J. Weber, Hillsboro, for respondent Union Elec. Co.

SIMON, Presiding Judge.

Larry and Darlene Logan, husband and wife (plaintiffs), appeal a judgment granting Union Electric Company's (Union Electric) motion to dismiss plaintiffs' personal injury claim for wife's injuries stemming from a vehicle accident, and husband appeals a judgment granting Union Electric's motion to dismiss husband's wrongful death claim for the death of his daughter, Irene Logan (daughter), arising out of the same accident. Because plaintiffs and husband have filed a singular brief for both appeals, we shall review their appeals together.

In their point on appeal, plaintiffs contend that the trial court erred in sustaining Union Electric's motions to dismiss for failure to state a claim upon which relief could be granted in that acts and omissions causing power outages can be a proximate cause of automobile accidents, and public utilities have a duty to the public to conduct their business in a safe and reasonable manner. We affirm.

When reviewing a grant of a motion to dismiss a petition, all facts alleged in the petition are deemed true and plaintiff is given the benefit of every reasonable intendment. *Magee v. Blue Ridge Professional Building Co., Inc.*, 821 S.W.2d 839, 842[2] (Mo. banc 1991).

Each of the plaintiffs filed a petition containing multiple counts against Bart Phillips, the City of Arnold, and Union Electric. The petitions assert a personal injury claim for wife's injuries and a wrongful death action for daughter's death, and they essentially allege that: (1) on or about March 16, 1992, the traffic signals at the intersection of Highway 141 and Highway 21 in Jefferson County, Missouri were inoperative due to a power failure, and consequently, motorists treated the intersection as a four-way stop; (2) Bart Phillips, a police officer for the City of Arnold, entered the intersection out of turn, at an excessive rate of speed for highway conditions at the time in that he continued at highway speed, without keeping a proper lookout, and knew or should have known there was a reasonable likelihood of collision in time to have stopped, swerved, or slackened his speed but failed to do so, thereby colliding with the vehicle operated by wife and in which daughter was a passenger, and as a result of the collision, wife suffered permanent injuries, and daughter died; (3) Bart Phillips was employed by the City of Arnold as a police officer and at the time of the collision was acting in the scope and course of his employment and was acting as an agent of the City of Arnold; (4) Union Electric provided the power for the traffic signals at the intersection of Highway 141 and Highway 21; (5) it became and was the duty of Union Electric at the time of the accident to use the highest degree of care to keep, repair, operate and maintain all wires, transformers, and other appliances, devices, apparatuses, conduits, and insulation so that the same would not fail in operation thereby causing injury to persons relying upon devices powered by Union Electric, or more particularly, to wife and daughter, and that Union Electric fully disregarded its duties on

or about the time of the accident by carelessly and negligently causing and permitting its wires, appliances, etc., to fail and that the accident would not have happened if Union Electric had used due care in providing electrical service to the traffic control devices at the intersection; (6) the accident would not have happened if Union Electric had used due care in providing electrical service to the traffic control devices; (7) Union Electric had exclusive possession, management and control of the wires, appliances, etc., and that it has a superior means of acquiring knowledge as to the cause or reason of the electrical power failure; and (8) as a direct and proximate result of such carelessness and negligence, wife was permanently injured and daughter died.

Union Electric filed motions to dismiss plaintiffs' petitions on the ground that they failed to state a claim upon which relief can be granted. The trial court sustained Union Electric's motions to dismiss plaintiffs' petitions and provided that its rulings are final for purposes of appeal and there is no just cause for delay.

■ In their point, plaintiffs argue that those who generate and transmit electricity are required to use the highest degree of care to prevent injury which reasonably can be anticipated, and that the precise injury complained of need not have been foreseen if the injury was a natural and probable consequence of an act or omission. Plaintiffs argue that here, an accident by motorists depending on electric signals is a natural and probable consequence of a power outage, and that such an outcome resulting from Union Electric's negligence is as threatening as the possibility of electrocution or fire. In support, plaintiffs rely on *Ferroggiaro v. Bowline*, 153 Cal.App.2d 759, 315 P.2d 446 (1957), where an automobile driven by Tipri left the roadway and collided with a mechanism that controlled the traffic signals at the intersection of two highways, causing the signals to cease functioning. *Id.* 315 P.2d at 447. Subsequently, an automobile in which Ferroggiaro was a passenger entered the intersection and collided with another automobile entering the intersection. As a result of the collision, Ferroggiaro died, and his heirs brought

an action for damages for his death. *Id.* The heirs named the drivers of the automobiles, Tipri, and Tipri's employer as defendants, and alleged in their amended complaint that Tipri drove negligently, colliding with the traffic control mechanism that controlled the signals at the intersection causing the signals to cease functioning, and that such negligence proximately caused the drivers' negligence, resulting in Ferroggiaro's death. *Id.* Tipri demurred generally and specially to the complaint and to the drivers' cross-complaints against him, and the trial court sustained the demurrers without leave to amend. *Id.* On appeal by the heirs and the drivers, the court reversed, stating that:

> In the present case the only question now presented is whether or not, when Tipri negligently collided with the power pole, and thus extinguished the traffic signals and other lights at the intersection, was it reasonably foreseeable that, as a result, cars might collide at the intersection? The answer to this question seems quite clear—it cannot be said, as a matter of law, that the type of accident that did occur was not reasonably foreseeable.

*Id.* at 448–49[3], 451. The court reasoned that:

> Under the allegations of the respective pleadings Tipri's acts created the specific condition which resulted in the injury. While he did not construct, maintain or repair the lights, his negligent acts did cause them to cease to function. Under the circumstances reasonable minds can differ on the issue of foreseeability.

*Id.* at 450[4]. Plaintiffs argue that in *Ferroggiaro*, a duty was necessary for the case to have proceeded, specifically that a driver of an automobile has a duty not to discontinue electrical power to traffic signals. Plaintiffs further contend that if an individual driver is given such a duty, then Union Electric owed a duty to wife and daughter to prevent a discontinuation of electrical power to the traffic signals at the intersection.

In response, Union Electric argues that Bart Phillips' negligence caused the accident and not Union Electric's, if it was negligent at all. Union Electric relies on *Patterson v. Meramec Valley R–III School District*, 864

S.W.2d 14 (Mo.App.E.D.1993). In *Patterson,* a classmate of plaintiff, a minor, took a broken piece of asphalt from an area of school property on which the pavement had deteriorated and threw it at plaintiff striking him on the head. *Patterson,* 864 S.W.2d at 15. The incident occurred on school property. *Id.* Plaintiff and his parents sued the school district and the classmate for personal injuries. *Id.* The school district filed a motion to dismiss, and the trial court sustained the motion on the grounds that the cause of action was barred by the sovereign immunity statute, § 537.600.1(2) R.S.Mo.1986, which provides that to allege a waiver of sovereign immunity the petition must allege the injury "directly resulted from the dangerous condition," and that the injury was caused by an intervening, superseding act of the classmate. *Id.* at 15, 16[3]. In affirming, the court held that plaintiff's petition was insufficient for failure to allege direct causation. *Id.* at 16[3]. The court reasoned that the allegation that the injury was sustained after a classmate threw the broken piece of asphalt forecloses an allegation of direct causation. *Id.* The court noted that a chain of events which began with defendant's negligence may be disrupted, or cut off, by an independent intervening new force where the new force becomes the direct and proximate cause of plaintiff's injury. *Id.* Union Electric contends that while the underlying issue in *Patterson* was sovereign immunity, the legal principles applied are of general application and are particularly applicable to the case at bar. Union Electric further argues that in both *Patterson* and here, although a condition existed of which complaint could be made, the condition caused no injury, and instead, a new, independent and intervening force was required to cause injury. Union Electric notes that in *Patterson,* the classmate's act of throwing the asphalt was considered to be the direct and proximate cause of injury, and here, it was the conduct of Bart Phillips which directly and proximately caused wife's injuries and daughter's death.

 The petitions essentially plead res ipsa loquitur for the claims against Union Electric. The requisites of a pleading for res ipsa loquitur are: (1) the incident resulting in injury is of the kind which ordinarily does not occur without someone's negligence; (2) the incident is caused by an instrumentality under the control of the defendant; and (3) the defendant has superior knowledge about the cause of the incident. *See First Baptist Church of Jefferson City v. Bybee Church Organs,* 789 S.W.2d 829, 831[3] (Mo.App. 1990). Res ipsa loquitur is a rule of evidence to infer negligence without direct proof. *Martin v. City of Washington,* 848 S.W.2d 487, 495[16, 17] (Mo. banc 1993).

 Even though the petitions plead res ipsa loquitur, they must also show that the alleged negligence was the proximate cause of wife's injuries and daughter's death. *See id.* If two or more persons are guilty of consecutive acts of negligence closely related in time, there is a question as to whether the initial act of negligence was the proximate cause of the injury or whether there was an efficient, intervening cause. *Krause v. U.S. Truck Co. Inc.,* 787 S.W.2d 708, 710[4] (Mo. banc 1990). The practical test of proximate cause is generally considered to be whether the negligence of defendant is that cause or act of which the injury was the natural and probable consequence. *Id.* at 710[5]. From the essential meaning of proximate cause arises the principle that in order for an act to constitute the proximate cause of an injury, *some* injury, if not the precise one in question, must have been reasonably foreseeable. *Id.* "The cases discussing proximate cause contain the exasperating caveat that in deciding questions of proximate cause and efficient, intervening cause, each case must be decided on its own facts, and it is seldom that one decision controls another.... Identifying those within the range of foreseeability who may be injured by an act of negligence is somewhat an exercise in subjectivity." *Id.* at 710[6] (citations omitted).

The parties have not directed us to any similar Missouri case nor has our research uncovered any. However, we have found several cases from other jurisdictions which are instructive. In *Adoptie v. Southern Bell Telephone and Telegraph Co. and Florida Power and Light Co.,* 426 So.2d 1162, 1163 (Fla.App.1983), Adoptie was injured in an intersection accident which was allegedly

caused by the inoperability of the traffic signal. *Id.* Adoptie sued the power company asserting that the defect resulted from the negligence of its work crew in cutting the power line supplying the traffic signal. *Id.* The court affirmed the dismissal of the petition against the power company on the grounds that its conduct was not a legal cause of plaintiff's damages. In support of its holding, the court cited *Pope v. Pinkerton–Hays Lumber Co.,* 120 So.2d 227 (Fla. App.1960), *cert. denied,* 127 So.2d 441 (Fla. 1961). In *Pope,* an employee of defendant construction company, while operating a bulldozer, negligently severed a telephone cable connected to plaintiff saw mill's telephone, and consequently, plaintiff's night watchman was unable to communicate by telephone with the fire department about the fire which occurred after the severing of the cable. *Pope,* 120 So.2d at 228–29. Plaintiff was awarded a judgment for its property damages, and on appeal, the judgment was reversed because the severance of the cable was a remote cause and the fire was an independent intervening cause of plaintiff's damages. *Id.* at 228, 232[9]. Subsequently, the Florida Supreme Court denied plaintiff's petition for certiorari, and in its opinion, found that the court of appeals' decision was a learned and accurate discussion of the law of proximate cause, and that the principles of law were correctly applied to the facts at hand. *Pope,* 127 So.2d at 443[3].

Also instructive is *Greene v. Georgia Power Co.,* 132 Ga.App. 53, 207 S.E.2d 594 (1974). In *Greene,* Georgia Power Company turned off certain power lines to replace a blown fuse at a substation operated by another power company, resulting in the inoperability of a traffic signal at an intersection for seven minutes. Subsequently, automobiles driven by plaintiff and Samples collided at the intersection. Before the collision, plaintiff and Samples drove across the intersection within a few minutes of each other and noticed that the traffic signal was inoperative. A few minutes later they approached the intersection, entered, and collided. Plaintiff stated that as she approached the intersection the second time the signal was operating and red against her and that it turned green before she entered, and defendant stated that as she approached and entered the intersection the second time the light was still inoperative. Plaintiff brought an action against the power companies, alleging they negligently blew the fuse, and negligently interrupted electrical service to the traffic signal. The trial court granted the power companies' motion for summary judgment. In affirming, the court held that possible negligence of the power companies in maintaining the equipment, which might have caused a power overload which might have blown a fuse which then necessitated the temporary shutting off of electrical current while replacing the fuse, is a chain of causation too remote, in view of the actual negligence of one or both of the drivers involved, to be a basis for the claim. *Greene,* 207 S.E.2d at 595–96[4]. The temporary shutting off of the electrical current furnished only the condition and occasion of the injury and was not the proximate cause. *Id.*

The factual situations presented in *Adoptie* and *Greene,* rather than *Ferroggiaro,* more clearly reflect the factual situation of this case, where in view of the alleged negligence of Bart Phillips, we likewise conclude that Union Electric's negligent act, if any, is too remote to be the proximate cause. The power failure provided only the condition or occasion of the injury. Our conclusion comports with the finding and rationale in *Patterson, supra,* and the policy recognized in *Scaife v. Kansas City Power & Light Co.,* 637 S.W.2d 731, 733[3] (Mo.App.1982) that a "public entity cannot bear the expense of each and every injury which, albeit foreseeable, is not *reasonably* foreseeable in light of the circumstances." *See also Prosser and Keeton on Torts* § 93, at 671 (5th ed. 1984). Point denied.

Judgment affirmed.

PUDLOWSKI, and GRIMM, JJ., concur.